**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | |
|---|---|
| In re: Mary Alice Mullen, ) | Case No. 12-61994 |
| ) | |
| Debtor. ) | |
| ) | Chapter 13 |

## **MEMORANDUM**

This matter comes before the court on an objection to the confirmation of the Debtor's proposed Chapter 13 plan ("the Plan") by the trustee.

### *Jurisdiction*

This Court has jurisdiction over this matter. 28 U.S.C. § 1334(a) & 157(a). This proceeding is a core proceeding. 28 U.S.C. § 157(b)(2)(A)&(I). This Court may enter a final order. This memorandum shall constitute the Court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, which is made applicable in this proceeding by Fed. R. Bankr. P. 7052.

### *Facts*

On August 27, 2012, the Debtor, who is married, filed an individual Chapter 13 petition with the Clerk of this Court. She scheduled real property commonly known as 127 Madison Circle, Madison Heights, Virginia, as property of the estate ("the Real Property"). The Debtor holds the Real Property with her husband as tenants by the entireties. The Debtor values the Real Property at $118,100.00. The Real Property is secured by a Deed of Trust in favor of the Virginia Housing Development Authority ("VHDA") in the current amount of approximately

1

$37,600.00.

In addition to the Claim of VHDA, the Debtor scheduled twelve unsecured creditors with claims totaling $29,477.65.  Of that amount $22,049.26 is owed to Wharton Auto, LLC, for a deficiency claim arising from the repossession of a vehicle.

Two creditors have filed unsecured claims in the total amount of $15,153.63.  One of those proofs of claim was a claim filed by Jefferson Capital Systems, LLC, in the amount of $10,160.21.  The Debtor did not scheduled Jefferson Capital Systems, LLC, as a creditor of her estate.

On September 10, 2012, the Debtor filed the Proposed Plan.  The Proposed Plan provides for 38 equal payments of $175.00, or $6,650.00.  From this amount, the Debtor's counsel would receive $2,750.00 and the trustee would receive approximately $650.00.  The Proposed Plan provides that one creditor, JCPenney would receive $276.00, or 100% of its claim.  The other unsecured creditors would receive $2,974.000 ( = $6,650.00 - [$2,750.00 + $650.00 + $276.00]).

The Chapter 13 trustee object to its confirmation under 11 U.S.C. § 1325(a)(4).

### *Discussion.*

The trustee's objection is brought under 11 U.S.C. § 1325(a)(4) which provides that ". . . [e]xcept as provided in subsection (b), the court shall confirm a plan if . . . the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date . . ."  ('the Chapter 7 Test").

When a creditor or the Chapter 13 trustee objects to the confirmation of a Chapter 13 plan, the burden of proof is on the debtor to demonstrate that the plan meets the statutory

requirements for confirmation. *See, e.g., Tillman v. Lombard,* 156 B.R. 156, 158 (E.D. Va. 1993) and *In re Melvin*, 411 B.R. 715 (Bankr. D.Kan. 2008). This burden includes the Section 1325(a)(4) requirement that the plan pay as much to unsecured creditors as they would receive if the case were a case under Chapter 7.

The Chapter 13 trustee objects to the Proposed Plan on the grounds that the Debtor has not carried the burden of showing that the Proposed meets the Chapter 7 Test. The trustee asserts that it is "virtually impossible"for a debtor to carry the burden in any case in which property is own by a debtor as a tenant by the entireties and there is equity in that property.[1]

The problem is that not all creditors would be paid from the same assets if the case were a case under Chapter 7. Some creditors, those with joint claims against both debtors, would be paid from equity in assets held as tenants by the entireties, while those creditors that only have a claim against one debtor, would not. Consequently, if the Proposed Plan were confirmed and a creditor were to file a joint proof of claim in any amount greater than $2,974.00, Section 1325(a)(4) would require the Debtor to file an amended plan to provide for that proof of claim. This is true because any such joint claim must be paid in full up to the amount of the Debtor's non-exempt equity in the Real Property and because the Proposed Plan does not provide for payments that would yield that amount to unsecured creditors.

The trustee asserts that this hypothetical situation too often morphs into reality, a fact that the trustee asserts is borne out by his experience. He also asserts that an analysis of his records supports this proposition. The trustee currently has 4600 open cases. Three-hundred of those 4600 cases have joint claims. The trustee randomly examined forty of those 300 cases and found

---

[1] The trustee asserts that there are other fact patterns which can yield the same result. Those are not now before the court.

3

that it was necessary to file a modified plan in 26 of those 40 cases (65%) once the claims bar date had passed.

The problem with this analysis is that the trustee is seeking authority to continue confirmation in cases in which the debtor(s) has equity in real property that is held as tenants by the entireties. Consequently, the analysis should begin by considering cases in which the debtor(s) holds such property, not in cases in which there are joint claims. It is the percentage of such cases in which modified plans are required after the bar date that is significant. To state it mathematically, the percentage to be calculated is:

$$\frac{\text{Cases with Property held by the Entireties that Require Plan Modification}}{\text{Cases with Property held by the Entireties}}$$

Not

$$\frac{\text{Cases with Joint Claims that Require Plan Modification}}{\text{Cases with Joint Claims}}$$

The former can be calculated by randomly considering cases until forty cases are found in which the debtor(s) hold property as tenants by the entireties and then determining the number of those forty cases that required plan modification based on the filing of joint claims.

The trustee will have 21 days from the date of the entry to file the revised analysis. The Debtor may file a response withing 14 days of the date that the trustee files his analysis.

## **ORDER**

The Court will not enter an order on the merits at this time. The trustee shall have 21 days from the date of the entry of this order on docket to file the revised analysis as described in the memorandum above, along with any comments or arguments. The Debtor may file a response within 14 days of the date that the trustee files his analysis. The parties may confer and

shorten these time limitations upon agreement between them.   The parties shall inform the Court of any such alteration in the schedule.

If the parties agree to submit the matter upon the merits without further analysis or pleadings, they shall inform the Court as soon as is practical.

So ORDERED.

Upon entry of this Memorandum the Clerk shall forward a copy to Stephen E. Dunn, Esq., and the Chapter 13 trustee.

Entered on this   30th    day of November, 2012.

_____
William E. Anderson
United States Bankruptcy Judge